[Crim. No. 23850. May 9, 1985.]

In re WILLIAM A. MISENER on Habeas Corpus.

544

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Stuart R. Rappaport, Albert J. Menaster, Deputy Public Defenders, and William A. Misener, Deputy Public Defender, in pro. per., for Petitioner.

Robert H. Philibosian and Ira Reiner, District Attorneys, Arnold T. Guminski, Harry B. Sondheim and Richard W. Gerry, Deputy District Attorneys, for Respondent.

Christopher N. Heard as Amicus Curiae on behalf of Respondent.

## OPINION

MOSK, J.— In this case we must decide whether Penal Code section 1102.5 (hereinafter section 1102.5) is constitutional. The section permits the prosecution in a criminal case to discover from the defendant or his counsel, following testimony on direct examination of defense witnesses other than the defendant, prior statements made by those witnesses. We conclude that the statute is unconstitutional because it violates that aspect of the defendant's privilege against self-incrimination requiring the prosecution to carry the entire burden of proving the defendant's guilt. Section 1102.5 runs afoul of this rule by compelling the defendant to supply the prosecution with evidence that can impeach his defense witnesses and thereby tend to incriminate him.

Petitioner Misener is an attorney employed by the Los Angeles Public Defender. He was acting as defense counsel in a prosecution for attempted robbery. The alleged victim in that case testified that on September 17, 1983, two Hispanic men approached her in a grocery store parking lot and, displaying a handgun, demanded her car keys and her money. She had seen these men when she entered the store approximately an hour earlier, at noon. She screamed, ran into the store, and told a box boy what had happened. The box boy had also seen two Hispanic men in the parking lot an hour earlier. On hearing the alleged victim's story, he drove around the neighborhood, noticed the defendants, and brought the police to them.

There was some ambiguity about the identification of the defendants and the time of the robbery. The box boy was unable to identify the defendants as the men he had seen in the parking lot because he had not seen their faces. The victim's testimony at the preliminary hearing regarding which defendant had the gun and what each defendant was wearing was different from the information she gave the police on the day of the crime. While the box boy stated that the woman had told him of the crime at noon, she testified that she entered the store at noon, shopped for approximately an hour, and then was approached by the defendants. A police officer testified that the police arrived at the store at 12:15 p.m.

The defense called various witnesses, including Mario Alarcon, the coach of the soccer team to which the defendants belong. He testified that on the

day in question he drove the defendants to the soccer field one block from the grocery store for a game that started at 9:35 a.m. and lasted approximately two hours. He detained the team for an additional 15 or 20 minutes, and left the defendants only at noon. Another witness testified he was with the defendants at the soccer game and did not leave their presence until noon.

After Alarcon's testimony, the prosecution moved under section 1102.5 to discover any prior statements made by the witness to defense counsel. Petitioner objected on the ground that the statute is unconstitutional. At an *in camera* hearing, petitioner stated that he had met with Alarcon on numerous occasions, that he had made written notes of one meeting and mental notes of the others, and that his client, one of the defendants in the underlying action, had been present at every interview.

Petitioner refused to reveal the content of the interviews, insisting that to do so would violate the defendant's attorney-client privilege, his constitutional right to counsel, and his privilege against self-incrimination. Petitioner explained that the interviews arose out of information that the defendant had given him as his attorney, and thus the defendant's statements were completely intertwined with those of the witness.

The court nevertheless required the disclosure, "excluding any statements made between attorney and client, excluding any statements of impressions, conclusions, opinions, legal research, or theories of any defendant. Only statements of the witness concerning matters within the scope of the direct testimony of that witness . . . ." On petitioner's further refusal to obey the order, the court held him in contempt. The trial court stayed the imposition of sanctions pending determination of the constitutionality of section 1102.5. Two months later a mistrial was declared in the underlying action.

Petitioner raises numerous challenges to the validity of section 1102.5. He contends that the statute violates the defendant's state and federal privileges against self-incrimination, his state and federal right to counsel, his federal due process rights, and his state attorney-client privilege and right to present a defense. Because we hold the statute unconstitutional under the state privilege against self-incrimination, we need not address petitioner's alternative claims.

I. *History of Prosecutorial Discovery in California*

Section 1102.5 was enacted after a long line of decisions on the subject by this court, the first being *Jones* v. *Superior Court* (1962) 58 Cal.2d 56

[22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]. In an opinion by Justice Traynor, an advocate of prosecutorial discovery, we experimented with opening the door to such a procedure. The defendant, charged with rape in that case, moved for a continuance to obtain medical evidence of his alleged impotence. The prosecutor in turn moved to discover the names and addresses of defendant's physicians and their reports and X-rays relating to the injury allegedly causing the condition. The trial court ordered the discovery, and the defendant sought a writ of prohibition.

We first noted that discovery in favor of defendants had been substantially liberalized by *People* v. *Riser* (1956) 47 Cal.2d 566 [305 P.2d 1], overruled on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631, 637, footnote 2, 648-649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]. We then reasoned that "[s]imilarly, absent the privilege against self-incrimination or other privileges provided by law, the defendant in a criminal case has no valid interest in denying the prosecution access to evidence that can throw light on the issues in the case." (58 Cal.2d at p. 59.) "[W]hen this court permitted discovery in advance of as well as at the trial [citations], it was . . . acting . . . to promote the orderly ascertainment of the truth. That procedure should not be a one-way street." (*Id.* at pp. 59-60.) Unfortunately the last sentence has been misused, on occasion, to justify improper discovery orders.

*Jones* acknowledged certain roadblocks that prevent criminal discovery from being a full two-lane highway. First, the defendant cannot be made to turn over private documents in his possession. (*Id.* at p. 60.) And, "a defendant need make no showing that the answer or document sought may be incriminating [citation], for the very fact that the prosecution seeks it, establishes that in the prosecution's view it may be incriminating." (*Ibid.*) Second, to the extent the documents sought by the prosecution were prepared by physicians to whom the defendant was sent by his attorney in anticipation of trial, these documents were protected by the attorney-client privilege. (*Id.* at pp. 60-61.) The prosecution was limited to discovery of "the names of the witnesses petitioner intends to call and any reports and X-rays he intends to introduce in evidence in support of his particular affirmative defense of impotence. . . . [Such an order sets] up a wholly reasonable rule of pleading which in no manner compels a defendant to give any evidence other than that which he will voluntarily and without compulsion give at trial." (*Id.* at p. 61.) "It simply requires petitioner to disclose information that he will shortly reveal anyway." (*Id.* at p. 62.)[1]

---

[1]Justice Traynor himself later explained his concept of the limited nature of the *Jones* decision. "The trial court's order that the defendant reveal the names of witnesses he intended to call and produce reports and X-rays he intended to introduce in evidence simply required him to disclose information that he would shortly reveal in any event. . . . He lost

But even this limited form of discovery proved to be unwise. In *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673], we examined more thoroughly the policies involved, and limited *Jones* to its facts. We discussed the developments since *Jones* in federal and state law on the privilege against self-incrimination, quoting from *People* v. *Schader* (1969) 71 Cal.2d 761, 770 [80 Cal.Rptr. 1, 457 P.2d 841]: " ' "the American system of criminal prosecution is accusatorial, not inquisitorial, and . . . the Fifth Amendment privilege is its essential mainstay. . . . Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against the accused out of his own mouth." (*Malloy* v. *Hogan* (1964) 378 U.S. 1, 7-8 . . . .) The People must "shoulder the entire load" of their burden of proof in their case in chief, without assistance either from the defendant's silence or from his compelled testimony.' " (2 Cal.3d at p. 325.)

■ In light of these fundamental policies, we set forth in *Prudhomme* the basic considerations governing any motion for discovery by the prosecution: "it is apparent that the principal element in determining whether a particular demand for discovery should be allowed is not simply whether the information sought pertains to an 'affirmative defense,' or whether defendant intends to introduce or rely upon the evidence at trial, but whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief. Although the prosecution should not be completely barred from pretrial discovery, defendant must be given the same right as an ordinary witness to show that disclosure of particular information could incriminate him. [¶] An ordinary witness need not actually prove the existence of an incriminatory hazard as that would surrender the very protection which the privilege against self-incrimination was designed to guarantee. Instead, the privilege forbids compelled disclosures which could serve as a 'link in a chain' of evidence tending to establish guilt of a criminal offense; in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question cannot possibly have a tendency to incriminate the witness." (*Id.* at p. 326.) Using this test, we issued a writ of prohibition barring an order to compel the defense attorney to disclose to the prosecutor the names, addresses and expected testimony of the witnesses whom the defendant intended to call at trial.

---

only the possible tactical advantage of taking the prosecution by surprise at the trial, an advantage that in any event would easily have gone for naught given the probability that the trial court would have granted the prosecution a continuance to prepare a rebuttal. . . . [W]e prohibited [the order's] enforcement to the extent that it required the defendant to reveal information that he did not intend to reveal at the trial." Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U.L.Rev. 228, 247-248.

Shortly after our decision in *Prudhomme,* the United States Supreme Court departed from the California trend. In *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893], the court upheld Florida's notice-of-alibi statute requiring a defendant in a criminal case to give notice to the prosecution if the defendant intended to claim an alibi, and to furnish the prosecution with information as to the place where defendant claimed to have been and the names and addresses of the alibi witnesses he intended to call. The court determined that no violation of a defendant's Fifth Amendment privilege would result, as the statute merely accelerated the disclosure of evidence that the defendant would introduce at trial. (*Id.* at p. 85 [26 L.Ed.2d at p. 452].) In *Wardius* v. *Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208], the high court found no violation of the Fifth Amendment privilege against self-incrimination in Oregon's notice-of-alibi statute, but held that it violated the defendant's due process rights because it did not provide for reciprocal discovery for the defense. (*Id.* at pp. 475-476 [37 L.Ed.2d at pp. 87-88].)

In *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45], we made it clear that our decision in *Prudhomme* did not depend on federal law: "While *Williams* may have laid to rest the contention that notice-of-alibi procedures are inconsistent with the federally guaranteed privilege against self-incrimination, this privilege is also secured to the people of California by our state Constitution, whose construction is left to this court, informed but untrammelled by the United States Supreme Court's reading of parallel federal provisions. . . . [*Prudhomme*] was in part based on this court's reading of pre-*Williams* federal law. Nevertheless, it cannot be gainsaid that *Prudhomme* put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires." (*Id.* at pp. 842-843.) In *Reynolds* we determined that any notice-of-alibi order must be shaped by the Legislature, not the courts. (*Id.* at p. 837.) We held that due process was violated by an order that the defense afford the prosecution at least three days advance notice of any alibi witnesses to be called at trial and give the prosecution the names, addresses and telephone numbers of these witnesses. The order was unconstitutional under *Wardius* because it was not reciprocal. (*Id.* at pp. 844-845.)

*United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160], presented to the United States Supreme Court a species of prosecutorial discovery different from the notice-of-alibi procedures it had earlier considered. The defense in *Nobles* proposed to call its investigator to challenge the validity of the identification of defendant by the prosecution's eyewitnesses. The trial court would not allow the investigator to testify unless the defense turned over his written report detailing the interviews he had had with the witnesses. The judge would have examined the report *in*

*camera,* and would have removed all references to matters not relevant to the witness' direct testimony. The Supreme Court upheld this order, concluding that "the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." (*Id.* at p. 234 [45 L.Ed.2d at p. 151].)

In *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65], the trial court on its own motion ordered both the prosecution and the defense to disclose the names of their prospective witnesses so that the names could be read to potential jurors to ascertain whether they were acquainted with any witnesses. The court intended to enjoin the prosecution from contacting the defense witnesses thus disclosed. We cited *Nobles* and *Williams,* and noted that "the trend of the federal high court's decisions on questions of compelled defense disclosure to the prosecution is not wholly consistent with our interpretation of the privilege against self-incrimination." (*Id.* at p. 524.) However, we emphasized the strength of our own Constitution and "affirm[ed] the continued vitality of the stringent standards set forth in *Prudhomme* for the protection of the privilege against self-incrimination as embodied in article I, section 15." (*Id.* at p. 525.) We issued a writ of prohibition restraining the court from enforcing its order because it had failed to "make the careful inquiry which we mandated in *Prudhomme.*" (*Id.* at p. 526.)

Our most recent case on these issues is *People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], in which we reiterated our holding in *Reynolds* that the fashioning of a proper rule of prosecutorial discovery must be left to the Legislature. (*Id.* at p. 56.) We thus disapproved of the trial court's order, following a defense witness' direct testimony, that the defense turn over notes prepared by a defense investigator regarding his conversation with the witness. We also noted that "In recognizing the original primacy of the Legislature in the field of creating rules of criminal procedure, we are not unmindful of the almost insurmountable hurdles likely to thwart any attempts to devise constitutionally permissible discovery rules applicable to defendant or defense material." (*Id.* at p. 54.) Furthermore, "if the Legislature undertakes to formulate a comprehensive solution that purports to be practical in application and consistent with the public interest, any legislative error would be subject to judicial review. Ours is likely to be the last word on the subject . . . ." (*Id.* at p. 56.)

The Legislature rose to the challenge, enacting section 1102.5 in 1982. That statute provides: "(a) Upon motion, the prosecution shall be entitled to obtain from the defendant or his or her counsel, all statements, oral or

however preserved, by any defense witness other than the defendant, after that witness has testified on direct examination at trial. At the request of the defendant or his or her counsel, the court shall review the statement in camera and limit discovery to those matters within the scope of the direct testimony of the witness. As used in this section, the statement of a witness includes factual summaries, but does not include the impressions, conclusions, opinions, or legal research or theories of the defendant, his or her counsel, or agent. [¶] (b) The prosecution shall make available to the defendant, as soon as practicable, all evidence, including the names, addresses and statements of witnesses, which was obtained or prepared as a consequence of obtaining any discovery or information pursuant to this section. [¶] (c) Nothing in this section shall be construed to deny either to the defendant or to the people information or discovery to which either is now entitled under existing law." We must decide whether, in light of the cases discussed herein, this section is constitutional.

## II. *Analysis Under the California Constitution*

We note at the outset the competing policies at issue. On the one hand is the "search for truth," emphasized by the district attorney and amicus curiae for the respondent. "The search for truth is not served but hindered by the concealment of relevant and material evidence. Although our system of administering criminal justice is adversary in nature, a trial is not a game. Its ultimate goal is the ascertainment of truth, and where furtherance of the adversary system comes in conflict with the ultimate goal, the adversary system must give way to reasonable restraints designed to further that goal." (*In re Ferguson* (1971) 5 Cal.3d 525, 531 [96 Cal.Rptr. 594, 487 P.2d 1234].)[2]

On the other hand, "any view that discovery should be simply a 'two-way street' overlooks the fact that certain constitutional protections, particularly the fifth amendment privilege against self-incrimination, are conferred on only one party." (Blumenson, *Constitutional Limitations on Prosecutorial Discovery* (1983) 18 Harv.Civ. Rights-Civ.Lib. L.Rev. 122, 176.) "It is no answer to this argument to suggest that the Fifth Amendment as so interpreted [to prevent notice-of-alibi procedures] would give the defendant an unfair element of surprise, turning a trial into a 'poker game' or 'sporting contest,' for that actual advantage to the defendant is inherent in the type of trial required by our Bill of Rights. The Framers were well aware of the awesome investigative and prosecutorial powers of government and it was in order to limit those powers that they spelled out in detail in

---

[2]In *Ferguson* we held that to further this truthseeking goal, the prosecution has a duty to reveal crucial information tending to impeach its main witness. (*Id.* at pp. 534-535.)

the Constitution the procedure to be followed in criminal trials.[3] A defendant, they said, is entitled to notice of the charges against him, trial by jury, the right to counsel for his defense, the right to confront and cross-examine witnesses, the right to call witnesses in his own behalf, and the right not to be a witness against himself." (*Williams* v. *Florida, supra,* 399 U.S. 78, 111-112 [26 L.Ed.2d 446, 482-483]; conc. and dis. opn. of Black, J.) "Any effort to further the truth-seeking function bears considerable risk of encroaching on constitutional and other protections: as we have noted, the problem is complicated by an interrelated composite of state and federal constitutional concerns, statutory rules and common law privileges." (*People* v. *Collie, supra,* 30 Cal.3d at p. 56.) In short, while the goal of full presentation of all the facts is laudable, it cannot be satisfied at the expense of the defendant's constitutional rights.

█ It is a fundamental tenet of California law that a statute must be construed to avoid doubts as to its validity, and must be upheld in the face of a constitutional challenge if it is reasonably possible to do so. (*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 147-148 [197 Cal.Rptr. 79, 672 P.2d 862]; *People* v. *Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149]; *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) █ We must also assume that in passing a statute the Legislature acted with full knowledge of the state of the law at the time. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified School District* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

With these principles in mind, petitioner's argument that section 1102.5 violates the test laid out in *Prudhomme* seems at first blush to fail. His basic claim is that the statute precludes the necessary *Prudhomme* inquiry into potential violation of the defendant's privilege against self-incrimination because it provides for an *in camera* examination to determine only whether the statements sought by the prosecution are limited to the scope of the direct examination. As we noted in *Allen* v. *Superior Court, supra,* 18 Cal.3d 520, 525, the *Prudhomme* inquiry is mandated by the Constitution "for the protection of the privilege against self-incrimination as embodied

---

[3]The greater investigative power and advantage of the government over the defense in a criminal case has been acknowledged by various commentators. For example, "At the outset of a criminal case, the advantage lies with the state because of its ability to gain access to the facts. Generally, the prosecution has both a greater opportunity, including the prompt on-the-scene investigations, and more formidable resources with which to gather and preserve evidence. Other factors add to the prosecution's strength in the adversary contest. Witnesses may be more willing to cooperate with the prosecution than with the defense because of their respect for governmental authority. The defense does not have the benefit of the search and seizure powers of the police. In addition, the defendant is severely inhibited from assisting in investigation while in custody." (Van Kessel, *Prosecutorial Discovery and the Privilege Against Self-Incrimination: Accommodation or Capitulation* (1977) 4 Hastings Const. L.Q. 855, 871-872.)

in article I, section 15. [¶] . . . A disclosure order which fails to meet that standard is constitutionally impermissible." Thus it might appear that section 1102.5 does not expressly provide for a *Prudhomme* inquiry.

But *Prudhomme* did not foreclose the possibility of a valid prosecutorial discovery rule: "A reasonable demand for factual information which, as in *Jones,* pertains to a particular defense or defenses, and seeks only that information which defendant intends to introduce at trial, may present no substantial hazards of self-incrimination and therefore justify the trial judge in determining that under the facts and circumstances in the case before him it clearly appears that disclosure cannot possibly tend to incriminate defendant." (*Prudhomme, supra,* 2 Cal.3d at p. 327.) "[I]t also would seem . . . that other information which cannot conceivably assist the prosecution in proving its case in chief is unprotected by the privilege, whether or not the defense intends to use it." (*Collie, supra,* 30 Cal.3d at p. 52.)

Similarly, although the language of section 1102.5 requires an *in camera* examination of statements to determine only if they are limited to the scope of direct, it does not preclude a *Prudhomme* inquiry as well. The relevant part of the statute provides that "the court shall review the statement in camera and limit discovery to those matters within the scope of the direct testimony of the witness." Thus, on the surface it appears that an accommodation can be made between the requirements of the Constitution and the language of section 1102.5. *Prudhomme* commands trial judges to inquire in any case in which the prosecution seeks discovery whether the information has any tendency to incriminate the defendant or to lighten the prosecution's burden. Because this is a constitutional requirement, because the Legislature is presumed to have knowledge of such mandates, and because nothing in section 1102.5 precludes such an inquiry, it might appear we could save the statute by reading into section 1102.5 the requirement of a *Prudhomme* determination. To hold that a statute is unconstitutional on its face because it does not explicitly recognize every relevant constitutional doctrine is untenable. There is no reason why a trial judge cannot conduct a *Prudhomme* inquiry in addition to the specific inquiry of section 1102.5.[4]

---

[4]Petitioner also contends that section 1102.5 cannot survive because it conflicts with Evidence Code sections 404 and 915, subdivision (a). Section 404 "provides a special procedure to be followed by the judge when an objection is made in reliance upon the privilege against self-incrimination. Under Section 404, the objecting party has the burden of showing that the testimony sought might incriminate him. However, the party is not required to produce evidence as such. . . ." (Cal. Law Revision Com., com. on Evid. Code, § 404.) Section 915, subdivision (a), provides in pertinent part that "the presiding officer may not require disclosure of information claimed to be privileged under this division in order to rule on the claim of privilege . . . ." To the extent these rules conflict with section 1102.5, and to the extent they are not constitutionally required, section 1102.5, as the later provision, controls. In light of our determination that section 1102.5 is facially unconstitutional, we need not resolve the issue whether these rules are indeed mandated by the Constitution.

However, as a matter of law any *Prudhomme* inquiry in a section 1102.5 case is likely to result in denial of the prosecution's motion for discovery.[5] Section 1102.5 appears designed for the sole purpose of facilitating impeachment of defense witnesses: it is directed only to prior statements of such witnesses, and is limited to the scope of their direct testimony. Any new information outside the scope of the witnesses' direct testimony would be barred by the statute's explicit language, and any consistent prior statements would be of no use to the prosecution in any event. Thus the section contemplates that prior statements by defense witnesses will conflict with the witnesses' direct testimony, and hence will provide evidence to impeach the witnesses. We must determine whether it is constitutionally permissible to compel the defendant to provide the prosecution with such evidence.

Various Courts of Appeal have addressed this issue. In *People* v. *Bais* (1973) 31 Cal.App.3d 663 [107 Cal.Rptr. 519], the court ordered discovery after the prosecution had rested and two defense witnesses had testified. The court did not make a *Prudhomme* inquiry, evidently believing it unnecessary in this context. The Court of Appeal discussed the contention in support of this position, which the district attorney has advanced in the present case as well: "This argument is based upon the language of the *Prudhomme* decision (quoted *supra*), which defines the applicable test as to whether the requested disclosure 'conceivably might lighten the prosecution's burden of proving its *case in chief*.' [Citation.] The Attorney General states the argument as follows: '*Prudhomme* approves by implication the discovery of matters not properly part of the prosecution's case in chief. Negating an alibi defense is not part of the case in chief. Impeaching the credibility of alibi witnesses is proper rebuttal.'" (*Id.* at p. 671, italics added.)

The court held this contention untenable for two reasons. First, it was possible the prosecution could move to reopen its case or in the event of a mistrial it would have a "new" case; in either way the discovered evidence would indeed aid the prosecutor's case-in-chief. (*Id.* at pp. 671-672.) Second, "the Attorney General's narrow interpretation of 'case in chief' is too technical to be applied in derogation of a constitutional privilege. In our view, the *Prudhomme* court's reference to the prosecution's 'case in chief' was appropriate because the court was dealing with a *pretrial* discovery order. However, the reference may not be construed to mean that a discovery cannot 'lighten the prosecution's burden,' in the constitutional sense,

---

[5]The dissenting opinion suggests that section 1102.5 was written to comply with *United States* v. *Nobles, supra,* 422 U.S. 225, (*post* at p. 560), and *Prudhomme* v. *Superior Court, supra,* 2 Cal.3d 320, (*post* at p. 561). Even if this theory is correct, we must nevertheless insure that the statute meets the standards we have set in our more recent, and controlling, decisions.

for the sole reason that it occurs after the prosecution has rested. This construction would import that a defendant's constitutional privilege against self-incrimination is suspended at a given point in his trial. The *Prudhomme* court's full discussion of the privilege precludes such reasoning." (*Id.* at p. 672, italics in original.) Thus, potentially impeaching evidence *may* violate the privilege if "the matters to be disclosed will conceivably 'lighten' the 'burden' which the prosecution bears *in bringing about a conviction of the accused.*" (*Ibid.*, italics in original; but see *People* v. *Chavez* (1973) 33 Cal.App.3d 454, 459 [109 Cal.Rptr. 157] [because a witness testifies and vouches for his statements, the interests in "ascertainment of the truth" make his prior statements discoverable]; *People* v. *Ayers* (1975) 51 Cal.App.3d 370, 379 [124 Cal.Rptr. 283] [the Fifth Amendment privilege is personal to the defendant and thus does not apply to the witness' statements];[6] *People* v. *Breckenridge* (1975) 52 Cal.App.3d 913, 925 [125 Cal.Rptr. 425] [the forced revelation after the prosecution had rested that the defendant had no alibi defense in no way lightened the prosecution's burden].)

In *People* v. *Thornton* (1979) 88 Cal.App.3d 795 [152 Cal.Rptr. 77], the court went further than *Bais* to hold explicitly that "the prosecution may not discover a prior statement in the hands of a defendant for the purpose of impeaching an alibi witness." (*Id.* at p. 802.) In part this holding was based on a footnote in *Allen, supra,* 18 Cal.3d 520, which discusses the ways in which disclosure of defense witnesses' identities at the beginning of trial could incriminate the defendant; it reads in part: "The trial judge's qualification of the instant order [enjoining the prosecution from contacting the witnesses until their names were revealed at trial] in no way prevents the People from investigating the background of the designated witnesses or questioning their friends or acquaintances. Such investigation may reveal the details of the alibi or other defenses, or may yield other evidence useful to the prosecution *including impeachment witnesses, inconsistent statements, and admissible evidence of specific instances of misconduct by the prospective witnesses.*" (*Id.* at p. 526, fn. 4, italics added.) Thus we indicated that it violates a defendant's privilege against self-incrimination to extract impeachment evidence from him.

We agree with the court in *Bais* that *Prudhomme*'s mandate cannot be arbitrarily limited to the prosecution's case-in-chief, and with the court in *Thornton,* as summarized in *Collie,* that "anything that would be of use to the prosecution in securing a conviction would for that reason be incriminatory, and thus privileged." (*Collie, supra,* 30 Cal.3d at p. 53.)

---

[6]Because we reaffirmed *Prudhomme* on state constitutional grounds, we disapproved of *Ayers* in *Collie,* 30 Cal.3d at pages 52-53.

As Justice Black declared in his separate opinion in *Williams* v. *Florida, supra,* 399 U.S. 78, 112 [26 L.Ed.2d 446, 483]: "[The rights guaranteed to a criminal defendant by the Constitution] are designed to shield the defendant against state power. None are designed to make convictions easier and taken together they clearly indicate that in our system the entire burden of proving criminal activity rests on the State. The defendant, under our Constitution, need not do anything at all to defend himself, and certainly cannot be required to convict himself. Rather *he has an absolute, unqualified right to compel the state to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources.* Throughout the process the defendant has a fundamental right to remain silent, in effect challenging the state at every point to: 'Prove it!' " (Italics added.)

By requiring the defendant to hand over evidence that will impeach his witnesses, section 1102.5 undeniably lightens the prosecution's burden. To the extent the prosecution gains information tending to negate a defense it is *not* investigating its own case, proving its own facts, or convincing the jury through its own resources. As *Prudhomme* states, "the privilege forbids compelled disclosures which could serve as a 'link in a chain' of evidence *tending to establish guilt of a criminal offense;* in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question *cannot possibly have a tendency to incriminate the witness.*" (2 Cal.3d at p. 326, italics added.) The constitutional protection does not end with the establishment of a prima facie case; it extends to the establishment of *guilt,* including absence of defense, excuse, or justification. There is no doubt that the evisceration of a defense "incriminates" the defendant.[7]

Additional support for this conclusion is found in one of the companion cases of *Prudhomme, Bradshaw* v. *Superior Court* (1970) 2 Cal.3d 332 [85

---

[7]The dissenting opinion's equation of the end of the prosecution's case-in-chief with the end of trial (*post* at pp. 560 and 561) is untenable. If "the discovery contemplated by section 1102.5 is *posttrial* discovery insofar as the prosecutor is concerned" (*post* at p. 560, italics in original), what use could he possibly have for the information demanded? Moreover, it is the defendant's privilege against self-incrimination that must be protected regardless of when the prosecutor considers the trial to be "over."

The district attorney argues that the defendant has no protected interest in lying, and that it is a perversion of the criminal justice system to allow the defense to present perjurious witnesses. However, a witness whose testimony conflicts with his or her prior statements is not necessarily lying. People may be reluctant to "get involved" in a criminal matter and thus may be evasive when first questioned by a lawyer or investigator. Fear may play a part. For example, in *In re Hall* (1981) 30 Cal.3d 408, 420 [179 Cal.Rptr. 223, 637 P.2d 690], an innocent man served time in prison because of witnesses' reluctance to testify truthfully. A crucial defense witness' "equivocal testimony at trial stemmed from fear of reprisal by [the actual perpetrator] and his friends." After she moved away from the town where the actual perpetrator lived, she finally came forward and testified to what she had really seen.

Cal.Rptr. 136, 466 P.2d 680]. There the discovery order required the defendants "'within twenty-four (24) hours of expected use . . . to furnish a statement of the expected testimony of each witness the defendants, and each of them, intend to call excluding, however, the defendants themselves.'" (*Id.* at p. 333.) This order could apply just as well after the prosecution's case-in-chief as before, and we held *Prudhomme* to be "fully dispositive" of the case. (*Ibid.*) "The fact that the order herein requires disclosure within 24 hours of petitioners' use of the evidence at trial does not necessarily avoid the problems discussed in *Prudhomme*. If the evidence might possibly incriminate petitioners, *they cannot be compelled to disclose it at any time prior to its actual use at trial.* As to such incriminatory evidence, petitioners must be permitted to wait until the last moment before deciding whether or not to introduce it at trial." (*Id.* at p. 333, fn. 3, italics added; see also *Allen* v. *Superior Court, supra,* 18 Cal.3d 520, 526, fn. 3, citing *Bradshaw* and declaring it to be irrelevant that *Prudhomme* dealt with pretrial disclosures, while the order in *Allen* occurred during trial.) A fortiori, if a defendant decides not to use such evidence, it cannot be imposed upon him.

The argument is made by the district attorney that even if the privilege against self-incrimination covers prior statements of defense witnesses, the defendant waives the privilege by putting the witnesses on the stand. This claim is based on the rule that "A defendant by testifying in his own behalf waives his state constitutional privilege against self-incrimination to the extent of the permissible scope of cross-examination." (*People* v. *Perez* (1967) 65 Cal.2d 615, 622 [55 Cal.Rptr. 909, 422 P.2d 597].) Reliance on this rule is misplaced. While it may be true that by putting witnesses on the stand the defendant waives any right to object to their vigorous cross-examination by the prosecution, he does not waive his right to refuse to supply the prosecution with the means to conduct that cross-examination.

The vice of compelled discovery was demonstrated by the district attorney in the course of oral argument to this court. He maintained that discovery could be required not only of an attorney for defendant, but also of a defendant himself if he appears in propria persona. Thus we could experience the remarkable spectacle not only of a defense attorney being cited for contempt for failing to aid the prosecution in the presentation of its case, as here, but even a defendant in propria persona being found in contempt for not assisting in his own prosecution.

The district attorney finally directs our attention to *United States* v. *Nobles, supra,* 422 U.S. 225, in which the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination, being personal to the defendant, did not bar the court from ordering the defense to

turn over a report prepared by the defense investigator regarding his discussions with a defense witness. (*Id.* at p. 234 [45 L.Ed.2d at p. 151].)[8] However, *Nobles* is not controlling in the case at bar for a number of reasons, the most significant of which being that the *Prudhomme* rule rests entirely on state, not federal, grounds. (*Reynolds* v. *Superior Court, supra,* 12 Cal.3d 834, 842-843.) Additionally, as allegedly occurred in the present case, a witness' statements to a defense attorney may be inextricably intertwined with the defendant's own statements. A defense attorney often finds witnesses through the defendant, and interviews those witnesses using information given to him by the defendant. Thus, even if the privilege against self-incrimination were to be limited to the defendant's own statements, it could be violated by a discovery order demanding witness statements made to the defense attorney or his agent. Further, a defendant suffers prejudice by association when a defense witness is impeached by evidence of prior convictions. (*People* v. *Woodard* (1979) 23 Cal.3d 329, 338 [152 Cal.Rptr. 536, 590 P.2d 391].) And in *People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272], we held that statements obtained in violation of a defendant's *Miranda* rights could not be introduced at trial for purposes of impeachment. We reasoned that there was great danger that juries, even with limiting instructions, will view evidence of impeachment as evidence of substantive guilt. (*Id.* at p. 112.) Evidence impeaching a defense witness could thus taint the defendant by implication.

The rationale in *Nobles* failed to consider the aspect of the privilege against self-incrimination that requires the prosecution to carry the entire burden of convicting a defendant. The privilege forbids compelled disclosures from the defendant that will aid the prosecution. To the extent they are useful to the prosecution the disclosures required by section 1102.5 violate the defendant's privilege against self-incrimination. Section 1102.5 is therefore unconstitutional.

■ An order of contempt cannot stand if the underlying order is invalid. (*In re Blaze* (1969) 271 Cal.App.2d 210, 212 [76 Cal.Rptr. 551].) Let a writ of habeas corpus issue as prayed.

Bird, C. J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

KAUS, J., Concurring.—I have for some time felt that the absolutist formulation of *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673]—that the privilege against self-incrimination

---

[8]The dissent also directs our attention to *Nobles.* Indeed, the dissent relies on federal law, which is not controlling in this area, and on dissenting—i.e., rejected—opinions in California cases.

forbids any compelled disclosure which might conceivably lighten the prosecution's burden of proving its case—leads, when rigidly applied, to very strange results. Just for example, when a defendant invokes the trial court's discretion to prohibit felony-impeachment and threatens not to testify if his request is denied, why should the privilege prohibit the court from asking for an offer of proof, so that it will know what it would be missing? (See *People* v. *Fries* (1979) 24 Cal.3d 222, 233 [155 Cal.Rptr. 194, 594 P.2d 19]; cf. *Luce* v. *United States* (1984) — U.S. — [83 L.Ed.2d 443, 105 S.Ct. 460]; *People* v. *Kyllingstad* (1978) 85 Cal.App.3d 562, 570-571 [149 Cal.Rptr. 637].)

The answer to my problem may lie in a reappraisement of just what it is that makes a communication "compelled" in the self-incrimination sense. Were it necessary, I would have no problem drawing a line between the offer of proof in support of a motion for a discretionary ruling and the compelled disclosures demanded by Penal Code section 1102.5 as the price for calling a witness.

With this reservation, I agree with the majority that section 1102.5 cannot be sustained.

**LUCAS, J.**—I respectfully dissent. In my view, newly adopted Penal Code section 1102.5 is valid and constitutional, offending no *legitimate* self-incrimination concerns.

Nearly 10 years ago, the United States Supreme Court *unanimously* upheld a trial court order compelling a criminal defendant to disclose, during trial, relevant portions of a defense investigator's report for purposes of cross-examining him. (*United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160].) Speaking through Justice Powell, the court determined that the investigator's report (which contained statements by prosecution witnesses) appeared highly relevant to "crucial" credibility issues, that production of the report might substantially enhance the "search for truth," and that compelled disclosure of the report would not impinge upon defendant's "personal" privilege against self-incrimination. (Pp. 232-233 [45 L.Ed.2d, p. 150].)

As the high court in *Nobles* observed, "The [trial] court's order was limited to statements [in the report] made by third parties who were available as witnesses to both the prosecution and the defense. Respondent [defendant] did not prepare the report, and there is no suggestion that the portions subject to the disclosure order reflected any information that he conveyed to the investigator. The fact that these statements of third parties were elicited by a defense investigator on respondent's behalf does not con-

vert them into respondent's personal communications. Requiring their production from the investigator therefore would not in any sense compel respondent to be a witness against himself or extort communications from him." (Pp. 233-234 [45 L.Ed.2d, p. 151].)

The *Nobles* court concluded that "the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." (P. 234 [45 L.Ed.2d, p. 151].) This unanimous holding clearly should control disposition of the present case. Accordingly, I cannot join in the majority's refusal to apply the federal constitutional rule or in its reliance upon *state* constitutional self-incrimination principles to invalidate Penal Code section 1102.5.

The new section, enacted in 1982 in response to this court's express refusal to approve any judicially created prosecutorial discovery procedures (see *People* v. *Collie* (1981) 30 Cal.3d 43, 54-56 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]), is carefully framed to meet the standards set forth in *Nobles*. Disclosure is limited to statements of defense witnesses "other than the defendant," so no self-incrimination is involved. Moreover, disclosure takes place "after that witness has testified on direct examination at trial," thereby distinguishing the present procedure from the more controversial area of *pretrial* criminal discovery. Indeed, under the statute disclosure takes place *after* the People have closed their case in chief and any defense motions for dismissal or acquittal have been made. In this sense, the discovery contemplated by section 1102.5 is *posttrial* discovery insofar as the prosecutor is concerned.

In addition, the new section provides the safeguard of an *in camera* inspection by the trial court to assure that disclosure is properly limited to matters within the scope of direct examination. Moreover, such disclosure may not include any work-product material of the defendant or his counsel. Finally, the prosecution must disclose to defendant any evidence obtained as a consequence of reviewing the defense statements provided for under the section. In short, the Legislature has undertaken a careful balancing of the competing interests involved, with a close view toward accommodating the self-incrimination concerns which so trouble the majority herein. Nonetheless, the majority clings to outmoded constitutional concepts and strikes down section 1102.5 because it has a possible tendency to assist the People in impeaching defense witnesses. Yet, as *Nobles* squarely holds, examination of the statements of third party witnesses for impeachment purposes does not invoke self-incrimination principles.

The majority misinterprets and misapplies the seminal case of *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673],

by ruling that section 1102.5 violates self-incrimination principles under the California Constitution. First, *Prudhomme* relied upon an analysis of *federal* constitutional rights, and we did not have the benefit of subsequent cases, such as *Nobles* and *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893] (upholding a notice-of-alibi statute), which undoubtedly would have affected our analysis. Second, even under *Prudhomme,* the statutory provision at issue here would have been upheld. In *Prudhomme,* we stressed that the self-incrimination privilege forbade compelled disclosure which might lighten the prosecution's burden of proving its "case in chief." (2 Cal.3d at p. 326.) As I previously pointed out, section 1102.5 comes into play only *after* the People have rested their case in chief.

Moreover, as we carefully stated in *Prudhomme,* "We do not intend to suggest that the prosecution should be barred from *any* discovery in this, or any other, case. A reasonable demand for factual information which . . . pertains to a particular defense or defenses, and seeks only that information which defendant intends to introduce at trial, may present no substantial hazards of self-incrimination and therefore justify the trial judge in determining that under the facts and circumstances in the case before him it clearly appears that disclosure cannot possibly tend to incriminate defendant." (2 Cal.3d at p. 327, fn. omitted, italics in original.)

I respectfully suggest that section 1102.5 was crafted to meet the foregoing *Prudhomme* criteria. "Posttrial" disclosure of the pertinent statements of defense witnesses who have already testified on direct examination presents no "substantial hazard" of self-incrimination. Nonetheless, the majority adopts the strict view of an earlier case that "'*anything* that would be of use to the prosecution in securing a conviction would for that reason be incriminatory and thus privileged.'" (*Ante,* p. 555, italics added; see *People* v. *Collie, supra,* 30 Cal.3d at p. 53.) In other words, as a practical matter, prosecutorial discovery, whether obtained pretrial or during trial, whether judicially or legislatively mandated, and whether or not permissible under the federal Constitution, is absolutely unavailable in this state. The resultant loss from the viewpoint of the administration of justice and the ascertainment of the truth is unfortunate indeed. (See *People* v. *Collie, supra,* 30 Cal.3d 43, 65-69 [dis. opn. by Richardson, J.]; *Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 527-533 [134 Cal.Rptr. 774, 557 P.2d 65] [dis. opn. by Richardson, J.] 533-537 [dis. opn. by Clark, J.]; cf. *People* v. *Disbrow* (1976) 16 Cal.3d 101, 118-121 [127 Cal.Rptr. 360, 545 P.2d 272] [dis. opn. by Richardson, J.].)

The majority's stance of total prohibition against compelled disclosure, whether pretrial or "posttrial," is in marked contrast to the extensive discovery developments in the federal and sister state courts. According to a

recent text on the subject, (1) both the federal courts and a "substantial majority" of state courts require the defendant to give advance notice of his intent to raise an alibi defense; (2) "over half the states" require defendant to give the prosecution advance notice of insanity or similar "mental" defenses; (3) "almost all" statutory or court rules governing defense discovery also include provisions allowing reciprocal prosecution discovery; (4) "approximately ten states" require advance disclosure of every defense to be raised at trial; (5) "approximately fifteen states" require pretrial disclosure of the names and addresses of all defense witnesses to be called at trial, and (6) "about half" of the states requiring such witness disclosure also require disclosure of the prior recorded statements of such witnesses. (2 LaFave & Israel, Criminal Proc. (1984 ed.) § 19.4, pp. 511-524; see also Fed. Rules Crim. Proc., rules 12.1 [notice-of-alibi], 16(b), 28 U.S.C. [reciprocal discovery].) By reason of the majority's holdings in the present case and prior cases, *none* of these six valuable discovery or disclosure procedures is available in California, thus creating a devastating "roadblock" in the search for the truth. (See *People* v. *Collie, supra,* 30 Cal.3d at p. 69 [dis. opn. by Richardson, J.].)

As Justice Clark observed in his dissenting opinion in *Allen, supra,* the majority's reliance upon the "independent state ground" of the state Constitution's self-incrimination privilege seems based on nothing more than a personal aversion to a perceived increasing conservatism in the decisions of the United States Supreme Court. (18 Cal.3d at p. 537.) Certainly, reliance upon the state Constitution is not based upon any elaborate or reasoned analysis of the policies underlying the self-incrimination privilege. (See, e.g., *Collie, supra,* 30 Cal.3d at pp. 52-56, where the majority found the entire issue of prosecutorial discovery too "complex" to resolve.)

By reason of the majority's reliance upon "independent state grounds" under the state Constitution (effectively precluding high court review of our decision), there now exist in this state *two* separate privileges against self-incrimination: (1) The privilege contained in the Fifth Amendment, applicable to the states by incorporation into the Fourteenth Amendment, as interpreted and applied by the United States Supreme Court, and (2) a second privilege, under the state Constitution, article I, section 15, applicable (presumably) whenever a majority of this court finds itself in disagreement with the United States Supreme Court. I agree with Justice Richardson's assessment when he stated in his *Disbrow* dissent (p. 118) that "The very obvious and substantial identity of *phrasing* in the two Constitutions strongly suggests to me the wisdom, insofar as possible, of identity of *interpretation* of those clauses. . . . [¶] [N]o special, unique, or distinctive California conditions exist which justify a departure from a general principle favoring uniformity. In my view, in the absence of very strong countervailing

circumstances we should defer to the leadership of the nation's highest court in its interpretation of nearly identical constitutional language, rather than attempt to create a separate echelon of state constitutional interpretations to which we will advert whenever a majority of this court differ from a particular high court interpretation." (Italics in original, 16 Cal.3d at pp. 118-119.)

As a result of the majority's reliance upon the "separate" self-incrimination privilege contained in the state Constitution, the prosecution henceforth will be deprived of the opportunity, available in federal and other state courts, of effective impeachment and cross-examination of key defense witnesses. Perjury brought to light under the federal procedure will remain undetected in California courts by reason of today's decision.

I would uphold the constitutionality of section 1102.5.

Respondent's petition for a rehearing was denied July 11, 1985.