[No. A039773. First Dist., Div. Four. Apr. 28, 1988.]

ERIN HALLISSY, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA
COUNTY, Respondent;
JOHN SAPP, Real Party in Interest.

COUNSEL

Peter W. Davis, John E. Carne, Lucy Ablan and Crosby, Heafy, Roach & May for Petitioner.

Neil L. Shapiro, Karl Olson and Cooper, White & Cooper as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Patrick R. Murphy, Public Defender, Jack A. Rauch, Deputy Public Defender, and Patricia N. Cooney for Real Party in Interest.

Stephen B. Bedrick as Amicus Curiae.

OPINION

POCHÉ, J.—Erin Hallissy, a journalist, challenges an order requiring her to reveal unpublished materials she has gathered and an ensuing order holding her in contempt for failing to do so. We grant the requested relief.

I.

Real party in interest John Sapp is presently charged with three counts of murder in the first degree. (Pen. Code, §§ 187, 189.)[1] He is also charged with the special circumstances of multiple murder and murder for financial gain. (§ 190.2, subds. (a)(1) and (a)(3).) Prior to the preliminary examination, Sapp was interviewed by petitioner, a reporter for the Contra Costa Times. Material gathered in the interview was published in the paper in an article entitled, "I killed many for pay." After the article appeared the prosecutor amended the complaint to allege the special circumstance of murder for financial gain. Sapp subpoenaed petitioner to appear at the preliminary examination with the notes of the interview. Petitioner then successfully moved to quash the subpoena on the ground that her unpublished material was protected by the First Amendment of the United States Constitution and by article I, section 2, subdivision (b), of the California Constitution.

After Sapp was held to answer he filed a motion pursuant to section 995. One of several contentions raised was that the order quashing the subpoena denied Sapp his substantial right to call a witness on his behalf. Defense counsel contended that it was crucial for Sapp's defense that the reporter be questioned about any statements Sapp might have made which contradicted or cast doubt upon the accuracy of the published statements. Counsel considered it probable that inconsistencies would be revealed by the unpublished material because in other instances Sapp had said different things at different times to different persons. Counsel pointed out that because the bulk of the evidence against Sapp came from Sapp's own statements, the defense had to discredit these statements. Counsel closed by arguing that section 995a, subdivision (b)(1), authorized the defense to obtain the full notes of the interview from petitioner; counsel did not seek to have the information set aside on this ground.

The prosecutor responded that he had no objection to this procedure; petitioner, by way of an amicus brief, objected on the merits, not to the procedure.

At the hearing on the substantive issue of whether the subpoena should have been quashed, the superior court accepted the proposition that in making its decision, it should balance the detriment to the reporter from revealing the unpublished notes against the detriment which would be suffered by Sapp's defense if he could not obtain the information. Thereafter, the court ruled in favor of Sapp, explaining "that the rights of the

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

defendant in this case are paramount to the media's protection. Although the newspapers are entitled to the protection of their sources and the confidentiality of information, this is a case that doesn't involve that in any way. We have no confidential sources. We have no information that is sought to be protected. We have no witnesses and names being sought to be protected. The source of the information is the very person who is seeking the full disclosure. [¶] [Petitioner's counsel] was quite candid during our last hearing, that she knew of no cases where we had this exact fact situation. My research has disclosed no fact situation identical. [¶] It would be a travesty, in my opinion, if we accorded to the First Amendment the protection sought here in a death-penalty case for disclosure of information given by the very person who is seeking its full disclosure."

Following this ruling, petitioner filed the instant petition which we summarily denied. Thereafter, petitioner appeared at the continuation of the preliminary hearing. The magistrate ruled that petitioner was not required to produce her notes of her interview with Sapp because Sapp had not laid a proper foundation by showing, for example, that petitioner had used the notes to refresh her recollection. However, petitioner was ordered to answer questions which would require disclosure of unpublished information. She refused and subsequently was found in contempt and was ordered into custody until the court's order was obeyed.

■ ■■■ The California Supreme Court stayed the execution of the order of contempt, granted review and transferred the matter to this court with directions to issue an alternative writ.[2]

## II.

■ We first consider whether a remand to the municipal court was authorized by section 995a, subdivision (b)(1).

Subdivision (b)(1) of section 995a provides: "Without setting aside the information, the court may, upon motion of the prosecuting attorney, order further proceedings to correct errors alleged by the defendant if the court

[2] Attached to an amicus brief filed with this court by a group of publications and journalism organizations are numerous petitions to the California Supreme Court urging that court to overturn the contempt ruling against petitioner.

Even though writ proceedings are original proceedings in the appellate courts, it is generally considered inappropriate to consider evidence not put before the lower court whose ruling is being challenged. (See *Mahoney* v. *Superior Court* (1983) 142 Cal.App.3d 937, 940, fn. 2 [191 Cal.Rptr. 425]; *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 165, fn. 5 [143 Cal.Rptr. 450]; but see *Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 670-671 [56 Cal.Rptr. 265, 423 P.2d 193].) For this reason and also because of their irrelevancy, we have given no consideration to the petitions.

finds that such errors are *minor errors of omission, ambiguity, or technical defect* which can be expeditiously cured or corrected without a rehearing of a substantial portion of the evidence. The court may remand the cause to the committing magistrate for further proceedings, . . . When remanding the cause to the committing magistrate, the court shall state in its remand order which minor errors it finds could be expeditiously cured or corrected." (Italics added.)

As we have explained, neither petitioner nor any party to the criminal proceedings complained of the use of a section 995a remand. In fact, at the municipal court after the remand order both the defense and prosecution stipulated to the procedure and the prosecutor was adamant in not wishing to discuss the propriety of the procedure. Nevertheless the magistrate found the order improper. The magistrate was correct.

A remand to the magistrate per section 995a is authorized in only very limited circumstances. (See, e.g., *Loverde* v. *Superior Court* (1984) 162 Cal.App.3d 102, 105 [208 Cal.Rptr. 134]; *People* v. *Rivas* (1985) 170 Cal.App.3d 312, 324-325 [216 Cal.Rptr. 477].) Illustrative is *Tharp* v. *Superior Court* (1984) 154 Cal.App.3d 215 [201 Cal.Rptr. 131]. There the defendant attempted to traverse a search warrant prior to the preliminary examination. His attempts to examine the search warrant affiant were frustrated, however, when the magistrate sustained repeated relevancy objections lodged by the prosecutor. The defendant challenged the magistrate's ruling in the superior court by way of a motion to set aside the information per section 995. Instead of setting aside the information, however, the superior court concluded that the error was minor and remanded the case to the magistrate with directions to allow the examination. (*Tharp* v. *Superior Court, supra,* 154 Cal.App.3d at pp. 218-219.)

The Court of Appeal concluded that the superior court had erred in ordering a remand because the magistrate's error—improperly sustaining relevancy objections—was not an error of "ambiguity," of "technical defect" or one of "omission," as required by section 995a. The court explained with respect to errors of omission: "An omission is the act of failing to include, of forgetting. [Citation.] . . . [¶] The magistrate's erroneous evidentiary ruling was the direct result of the prosecutor's attempt to limit inquiry into the affiant's knowledge regarding the informant's background. . . . Without question, the error was the result of volitional decisions, unequivocal in nature. Since the error does not satisfy the 'of omission' requirement of section 995a, subdivision (b), a remand to the committing magistrate is therefore not authorized." (*Tharp* v. *Superior Court, supra,* 154 Cal.App.3d at p. 220; accord *People* v. *Rivas, supra,* 170 Cal.App.3d at pp. 324-325.)

Here, the alleged error of the magistrate—ruling incorrectly on defendant's motion to quash—was obviously not an error of "ambiguity," of "technical defect" or of "omission" as defined in *Tharp*. It was, if anything, the result of a volitional decision, unequivocal in nature. Under section 995a, subdivision (b)(1), as definitively interpreted in *Tharp,* the superior court had no jurisdiction to remand the case to the magistrate.

■   Finally we note that the complacency of the parties conferred no legal blessing upon the remand order. Jurisdiction beyond that prescribed in section 995a, subdivision (b)(1), cannot be conferred upon the superior court by the consent of the parties. (Cf. 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 10, pp. 374-376.)

■■   The order of remand and ensuing order of contempt it generated (cf. *In re Misener* (1985) 38 Cal.3d 543, 558 [213 Cal.Rptr. 569, 698 P.2d 637]) must therefore be set aside.

### III.

In the interests of judicial economy and for the guidance of the trial court, we will proceed to reach the merits of the controversy.

California has had a reporter's shield law since 1935 (see *KSDO* v. *Superior Court* (1982) 136 Cal.App.3d 375, 379-381 [186 Cal.Rptr. 211]; see also *The Newsgatherer's Shield—Why Waste Space in the California Constitution?* (1985) 15 Sw.U.L.Rev. 527, 533), which is now found in both the Evidence Code (§ 1070)[3] and the California Constitution (art. I, § 2, subd.

---

[3] Evidence Code section 1070 provides: "(a) A publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, or by a press association or wire service, or any person who has been so connected or employed, cannot be adjudged in contempt by a judicial, legislative, administrative body, or any other body having the power to issue subpoenas, for refusing to disclose, in any proceeding as defined in Section 901, the source of any information procured while so connected or employed for publication in a newspaper, magazine or other periodical publication, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.

"(b) Nor can a radio or television news reporter or other person connected with or employed by a radio or television station, or any person who has been so connected or employed, be so adjudged in contempt for refusing to disclose the source of any information procured while so connected or employed for news or news commentary purposes on radio or television, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.

"(c) As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated and includes, but is not limited to, all notes, outtakes, photographs, tapes or other data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such material has been disseminated."

(b)).[4] Because the California shield law does not itself preclude the imposition of sanctions other than contempt, it confers the absolute immunity it appears to offer only when a nonparty witness refuses to disclose the covered information. "Since contempt is generally the only effective remedy against a nonparty witness, the California enactments grant such witnesses virtually absolute protection against compelled disclosure. ■ A *party* to civil litigation who disobeys an order to disclose evidence, however, may be subject to a variety of other sanctions, including the entry of judgment against him." (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 268, 274 [208 Cal.Rptr. 152, 690 P.2d 625], italics added.)

■ Despite this grant of immunity from contempt, "[i]n cases involving a conflict between the criminal defendant's constitutional right to a fair trial and a newsperson's protection under the First Amendment and section 1070, the criminal defendant's constitutionally derived protection has resulted in the rule that 'where a criminal defendant has demonstrated a *reasonable possibility* that evidence sought to be discovered might result in his exoneration, he is entitled to its discovery.'" (*Playboy Enterprises, Inc.* v. *Superior Court* (1984) 154 Cal.App.3d 14, 24-25 [201 Cal.Rptr. 207], citing and quoting *CBS, Inc.* v. *Superior Court* (1978) 85 Cal.App.3d 241, 251 [149 Cal.Rptr. 421], italics in original; *People* v. *Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1].) Thus, the burden lies with the criminal defendant in such a situation to make the "reasonable possibility" demonstration. The contours of the defendant's task were detailed in *Hammarley* v. *Superior Court* (1979) 89 Cal.App.3d 388 [153 Cal.Rptr. 608]: "Faced with a claim of privilege, the burden is on the party seeking to

---

[4] Article I, section 2, subdivision (b), of the California Constitution provides: "(b) A publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, or by a press association or wire service, or any person who has been so connected or employed, shall not be adjudged in contempt by a judicial, legislative, or administrative body, or any other body having the power to issue subpoenas, for refusing to disclose the source of any information procured while so connected or employed for publication in a newspaper, magazine or other periodical publication, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.

"Nor shall a radio or television news reporter or other person connected with or employed by a radio or television station, or any person who has been so connected or employed, be so adjudged in contempt for refusing to disclose the source of any information procured while so connected or employed for news or news commentary purposes on radio or television, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.

"As used in this subdivision, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated and includes, but is not limited to, all notes, outtakes, photographs, tapes or other data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such material has been disseminated."

avoid the privilege competently to demonstrate not only that the evidence sought is relevant and necessary to his case, but that it is not available from a source less intrusive upon the privilege. Moreover, as with any attempt to discover evidence subject to a claim of privilege, a defendant must show a reasonable possibility that the evidence sought might result in his exoneration." (*Id.* at p. 399.)

Sapp comes close to meeting only one of the several concomitants of the presentation described in *Hammarley.* Arguably he approaches an adequate showing of relevancy: he wishes to attack his own credibility by using inconsistent statements that he may have made to the reporter during the interview. But he has made no attempt to demonstrate that this particular item of evidence, if it exists, is necessary to his case, the second prong of *Hammarley.* In fact he concedes there are other individuals to whom he confessed and through whom he could prove the falsity of his confessions. This concession also destroys any possibility that he can meet the third and fourth *Hammarley* hurdles: that the information he seeks is not available from a source less intrusive upon the privilege and that there is a reasonable possibility such evidence might result in his exoneration. Not only has he not met that burden he has proved the opposite: there are numerous nonprivileged sources of apparently fungible inconsistent statements by Sapp.

Let a peremptory writ of mandate issue directing respondent superior court to: (1) vacate its order of remand pursuant to section 995a, subdivision (b)(1); and (2) direct the municipal court to vacate its order holding petitioner in contempt.

Anderson, P. J., and Channell, J., concurred.