No. 87-164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA, ex rel.,
JAMES CARKULIS,

       Relator,

  -vs-

DISTRICT COURT OF THE THIRTEENTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
YELLOWSTONE, HONORABLE G. TODD BAUGH,
Presiding,

       Respondent.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        Allen Beck argued, Billings, Montana
        Jeffrey T. Renz argued, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Judy Browning argued, Asst. Atty General, Helena
        Harold Hanser, County Attorney, Billings, Montana
        Terry Swift, Deputy County Atty., Billings
        Mike McGrath argued, County Attorney, Helena, Montana

---

        Submitted: September 2, 1987
          Decided: November 25, 1987

Filed: NOV 2 5 1987

*Ethel M. Harrison*
_____
           Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this case, we determine that the reciprocal pretrial discovery statutory provisions in criminal cases, for the purposes of this case and when applied as herein directed, are amenable to the state and federal constitutions and not barred by the provisions of the state and federal constitutions herein specified.

This is an original proceeding in this Court. Relator James Carkulis stands charged with the commission of a crime in the District Court, Thirteenth Judicial District, County of Yellowstone. The State had moved the District Court for an order requiring reciprocal discovery by the defendant under § 46-15-323(4), MCA (1985). In an order dated December 20, 1985, the District Court granted the State's motion for pretrial discovery but made no provision in the order for sanctions in the case of noncompliance.

On January 15, 1986, Carkulis filed in this Court a petition for writ of supervisory control or writ of certiorari (Cause no. 86-026 in this Court) relating to the December 20, 1985 District Court order. We ordered a response, and received an answer and briefs from the Attorney General of the State of Montana; the County Attorney of Yellowstone County; and amici curiae from the Moses Law Firm of Billings, Montana; Ungar Law Firm of Bozeman, Montana; and the Montana County Attorneys Association, through its president Mike McGrath of Helena, Montana. However, on December 11, 1986, after oral argument, we denied the petition for writ of supervisory control without prejudice upon the grounds that the District Court had imposed no

sanctions, and might never impose sanctions, and that there was an adequate remedy by appeal.

Thus, the matter returned to the District Court. There, on March 9, 1987, Carkulis moved the District Court to reconsider its order of December 20, 1985. On April 9, 1987, the District Court issued its order denying Carkulis' motion to reconsider and further ordering that unless the defendant disclosed the materials set out in the December 20, 1985 order by May 1, 1987, he would "be precluded from offering the same at trial." The time for compliance by the defendant has passed and neither he, his counsel nor agents, have complied with the pretrial discovery order of the District Court. On May 4, 1987, Carkulis, as relator, filed his second petition for writ of supervisory control or writ of certiorari in this Court and thus the issue is before us again.

This time, a sanction has been imposed against the defendant, the most drastic available to the District Court under § 46-15-329, MCA, that of barring him from offering evidence not disclosed before May 1, 1987.

The first problem is whether this Court should consider the issuance of a writ, either of supervisory control, or of certiorari. Under § 27-25-102(2), MCA, if a district court, exercising judicial functions, has exceeded its jurisdiction, and if in the judgment of this Court there is no plain, speedy or adequate remedy, certiorari will lie. Section 27-25-102(2), MCA. In like manner, when a cause of action or a right has arisen under conditions making due consideration in the trial court and due appeal to this Court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary and proper, a writ of supervisory control may issue. Rule 17(a), M.R.App.P. A petition seeking original jurisdiction in this Court must make a

showing of the inadequacy or unavailability of any other remedy, either in the District Court or by appeal to this Court. Crist v. Boyd, District Court (1976), 172 Mont. 38, 560 P.2d 531; Petition of Waite (1964), 143 Mont. 321, 322, 389 P.2d 407, 408.

In the first proceedings brought by Carkulis in this Court, the Attorney General, in his memorandum in support of his response, agreed we should take jurisdiction of the proceedings, and pointed out a proper reason:

> For example, if the court were to decline to take jurisdiction of this application, relator would presumably comply with the District Court's disclosure order. Should relator then be convicted and successfully appeal his case, it might prove unfair to him should a new trial be ordered, since the State would have the benefit of the very information which relator believes he should not be required to disclose. Once disclosures are made, they cannot be retracted. See Wardius v. Oregon, 412 U.S. 470, 478 (1973).

Under the record as it is now presented to us in this second application by Carkulis, since he is barred from offering evidence pertaining to the materials sought in pretrial discovery, he may be entirely precluded from offering a defense. He must risk conviction in order to effect an appeal, and then risk the uncertainty of our decision on appeal. Without our intervention now, defendant has a Hobson's choice: Go back to the District Court, comply with the pretrial discovery, hope that the District Court will rescind its order barring the evidence and rely on a successful appeal; or, alternatively, stand pat, risk conviction, and the uncertainty of success on appeal. Moreover, the District Court order is binding not only on the defendant, but upon his counsel and their agents. They are also at risk for noncompliance through contempt proceedings against them.

Counsel for the State in prosecuting defendant is likely to have a dilemma here with respect to the law: There is a split of authority among neighboring states as to the legality of such pretrial discovery provisions. Unless we set the course in this case of first impression, there are no Montana guideposts for counsel advising their clients with respect to pretrial discovery in criminal cases.

Accordingly, we accept jurisdiction to determine if supervisory control is proper in this matter.

The District Court's Order

On December 20, 1985, the District Court entered its order for pretrial discovery which included the following provisions:

> IT IS HEREBY ORDERED that the defendant, James Carkulis and his counsel or agents, make the following materials and information available to the State without delay for examination and reproduction, subject to constitutional or statutory limitations:
>
> (1) the names and addresses of all persons, other than the defendant, whom he in good faith knows he will call as witnesses at trial, and copies of all statements made by them related to this case;
>
> (2) the names and addresses of any expert witnesses whom he in good faith knows he will call at trial, and summaries of the testimony he expects the witnesses to give at trial;
>
> (3) all papers, documents, photographs and other tangible objects which the defendant in good faith knows will be used as exhibits at trial; and
>
> IT IS FURTHER ORDERED that the defendant shall promptly notify the State of the existence of any additional information or material referred to in the foregoing that is discovered by the defendant after this Order and make such information or material available for examination and reproduction without delay.

On April 9, 1987, the District Court, by a further order, supplemented the foregoing provisions by providing that if the defendant Carkulis did not disclose the materials set out above by May 1, 1987, he would "be precluded from offering same at trial."

## Issues Raised By Defendant

The defendant maintains that the District Court's orders violate his rights secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Art. II, §§ 11, 17, 24 and 25 of the 1972 Montana Constitution.

## The Applicable Statutes

The legislature adopted in 1985 several provisions relating to reciprocal pretrial discovery in criminal cases. Ch. 202, Laws of Montana (1985). The provisions relating to pretrial reciprocal discovery are now embodied in §§ 46-15-321 through 46-15-329, MCA. In general, these statutes contain applicable definitions (§ 46-15-321); requirements for disclosure by the prosecution (§ 46-15-322); requirements for disclosure by the accused (§ 46-15-323); materials not subject to disclosure (§ 46-15-324); a continuing duty to disclose (§ 46-15-327); a provision for excision or protective orders (§ 46-15-328); and provisions for sanctions in the case of noncompliance (§ 46-15-329).

The orders of the District Court in this case are based on provisions contained in § 46-15-323, MCA. The important subsections are:

> (4) Simultaneously with the notice of defenses submitted under subsection (3), the defendant shall make available to the prosecutor for testing, examination, and reproduction:
>
> (a) the names and addresses of all persons, other than the accused, whom he will call as witnesses at

trial, together with all statements made by them in connection with a particular case; and

(b) the names and addresses of experts whom he will call at trial, together with the results of the physical examinations, scientific tests, experiments, or comparisons, including all written reports and statements made by them in connection to the particular case; and,

(c) a list of all papers, documents, photographs, and other tangible objects that he will use at trial.

(5) The defendants obligation under this section extends to material and information within the possession or control of the defendant or his attorneys or agents.

## Disclosure of Witnesses and Statements

Carkulis attacks the provisions of § 45-15-323(4)(a), MCA, which requires the disclosure of witnesses the defendant will call at trial, together with all statements made by them in connection with this particular case.

The word "statements" found in the statute may in itself be overbroad. We construe the word statements to include tapings, transcriptions, writings or other means used to memorialize the witness as to his observation or impression of a situation or event, and which may be used either to refresh the recollection of the witness or to impeach him at trial.

Carkulis attacks this statute on the grounds that it violates the state[1] and federal[2] rights against self-incrimination and deprives him of due process.[3]

With respect to the defenses of alibi and self-defense and the former defense of insanity, this Court has already spoken and approved the requirement for a production of a list of witnesses to be used at trial. State ex rel. Sikora v. District Court (1969), 154 Mont. 241, 462 P.2d 897. Sikora arose under former statute § 46-15-301, now repealed, (Ch. 202, Laws of Montana (1985)), but the provisions of which have been subsumed in Part 3, Title 46, Criminal Procedure. In Sikora, this Court declared that not all evidence obtained from a defendant is privileged under the Fifth Amendment of the United States Constitution. The production by the defendant of a list of his witnesses relating to those defenses was approved on the grounds that

---

1   "No person shall be compelled to testify against himself in a criminal proceeding.. . ."   Art. II, § 25, 1972 Montana Constitution.

2   "No person . . . shall be compelled in any criminal case to be a witness against himself . . ."   Fifth Amendment to the United States Constitution.

3   "No person shall be deprived of life, liberty or property without due process of law."   Art. II, § 17, 1972 Montana Constitution.

    "No person . . . shall . . . be deprived of life, liberty or property, without due process of law;. . . ."   Fifth Amendment to United States Constitution.

    ". . . nor shall any State deprive any person of life, liberty or property, without due process of law;. . . ."   Fourteenth Amendment to United States Constitution.

such production merely enabled the prosecution to perform its function at trial more effectively, that the right to remain silent was not violated because production was not required if the witnesses would not testify, and that the defendant was not required to reveal anything more than he would voluntarily and without compulsion give at trial. This Court also found protection for the defendant in Sikora in that the statute was directed to the purpose of giving notice to the state and that "the defendant who chooses to remain silent until later than the statute indicates may do so and for good cause may still interpose his defenses." 154 Mont. at 251, 462 P.2d at 902. The logic of Sikora now controls the additional defenses now listed in § 46-15-323(3) for which the defendant must provide written notice and a list of the witnesses pertaining thereto that he will call at trial.

The United States Supreme Court in Williams v. Florida (1970), 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446, upheld a state statute requiring the disclosure of an alibi defense and alibi witnesses to the state prior to trial as not violating the federal right against self-incrimination. Williams is essentially grounded on the "accelerated disclosure" theory, that is, that at trial, the defendant would have to reveal his alibi and his witnesses relating thereto, and that accelerating the disclosure does not affect his constitutional rights against self-incrimination. Nonetheless, in Williams, Justice Black took an opposite tack:

> [Federal constitutional rights] are designed to shield the defendant against state power. None are designed to make convictions easier and taken together they clearly indicate that in our system the entire burden of proving criminal activity rests on the state. The defendant, under our constitution, need not do anything at all to defend himself, and certainly cannot be required to help

convict himself. Rather he has an absolute, unqualified right to compel the state to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources. Throughout the process the defendant has a fundamental right to remain silent, in effect challenging the state at every point to: "Prove it!"

399 U.S. 78, 112, 90 S.Ct. 1893, 1912, 26 L.Ed.2d 446, 483 (Black, J., dissenting).

Justice Black's argument for the rights of an accused has not, for the most part, been followed by other federal and state courts. More and more, there have been declarations that a criminal trial is a "search for truth," that criminal trials are not a game of surprise, and that the right of discovery is a "two way street." Montana has followed that tack since Sikora. It is clear that the accused must give the State pretrial notice of affirmative defenses, and produce for the State a list of the witnesses he will call to establish the defense.

The question that remains regarding witnesses is whether the defendant must also make a pretrial disclosure of witnesses that he will call in his general defense of the crime charged. Immediately, the Sikora ruling comes to the fore: the defendant is merely revealing in advance of trial what eventually he would have to reveal during the trial. Under the order of the court in this case, and under the statute, Carkulis does not have to reveal to the State whether he as a defendant will or will not take the stand in his defense. The requirement is not self-incriminatory as to him. With respect to other witnesses for his general defense, the logic of Sikora and Williams seems to apply: their names will be revealed in due course in any event. It is certain that if, without prior disclosure, a devastating surprise witness for the defendant were to testify, the State

- 10 -

would obtain from the trial judge a continuance in order to meet the testimony. Pretrial revelation may avoid surprise, aid the administration of the trial courts and provide an orderly resolution of the charge. On those grounds, and because we see protections for the defendant in other provisions of the discovery statutes, we hold that the defendant must provide to the State a list of all witnesses he intends to call at the trial. The District Court subjected this requirement to "constitutional or statutory limitations."

We turn now to the question of whether the defendant must also surrender to the State copies of statements obtained by the defendant or his agents and counsel statements of all witnesses he will call at trial.

The State contends that the discovery statutes requiring copies of statements merely provide for the accelerated production of evidence that the defendant would voluntarily and without compulsion provide at trial. The State also argues that the protections provided by the Fifth Amendment and Art. II, § 25 of the Montana Constitution apply only to the statements of a criminal defendant. The privilege does not extend to the testimony or statements of third parties. Therefore, the State contends that the provisions of §§ 46-15-323(3) and (4), MCA, are constitutionally sound.

Carkulis and amici contend, however, that the production of such items may be incriminating in that they could provide the State with a "link in the chain" of evidence sufficient to establish a prima facie case. That, they contend, would have the effect of lessening the burden of beyond a reasonable doubt and in effect violate the accused's right to remain silent.

In considering the question of pretrial production by an accused of prospective witness statements relating to his

general defense, we are leading into a field where there is little authority to guide us. For one thing, there is a critical difference between the discovery and inspection rules provided under the federal system and those of the Montana criminal discovery statutes. Under Rule 16, Fed.R.Crim.P., any discovery must first be defendant triggered. Discovery from the defendant as to documents and tangible objects, and reports of examination and tests, are permitted only if defendant has requested from the government the same kinds of disclosure. Rule 16(b)(1)(A), (B), Fed.R.Crim.P. Except for these, the federal rule does not authorize the discovery or inspection of reports, memoranda or other internal defense documents made by the defendant or his attorneys in connection with the investigation or defense of the case, or statements made by the defendant or by government defense witnesses or by prospective government or defense witnesses. Rule 16(b)(2), Fed.R.Crim.P. In fact, the Congress specifically declined to provide for the discovery of witness lists in Rule 16. Moore's Federal Practice (1986 Rules Pamphlet at 231).

In addition, Rule 12.1, Fed.R.Crim.P. provides for a notice of alibi, but it is government triggered. Rule 12.1 requires the government to provide the defendant with a demand stating the time, date and place where the alleged offense was committed whereupon the defendant must serve within 10 days a notice of intention to offer the defense of alibi and within an additional 10 days provide a list of the names of witnesses who establish the alibi. The defendant must also state the specific place at which he claims to have been at the time of the alleged offense. Montana's statutes have no such provisions.

Thus, the State has relied on a number of cases from the federal system which are not on point. In those cases, the

defendants are not required to produce statements until the government has completed its case and if the statements are being used by the defendant in his defense or to impeach a witness. See, for example, United States v. Nobles (1975), 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141.

Two sister states have refused to permit a pretrial disclosure of witness lists or statements. One is Alaska, expressing its decision in Scott v. State (Alaska 1974), 519 P.2d 774. There the Superior Court, apparently without direct statutory authority, had required a defendant charged with rape to disclose to the prosecution the names of all prospective defense witnesses other than the defendant himself, the production for inspection and copying of any written or recorded statements of those witnesses, and advance notice of an alibi defense. The defendant sought interlocutory appellate review in the Alaska Supreme Court which was granted. The Supreme Court struck down the Superior Court order, including the requirements relating to the alibi defense. The Alaska Supreme Court decided to interpret the Alaska Constitution more broadly than the United States Supreme Court construed the Fifth Amendment in Williams v. Florida, supra. It determined that the pretrial transfer of witness lists and witness statements was testimonial because a document containing such facts transmitted from one party to another constituted a communication of cognizable information from one source to another. The Supreme Court was of the opinion that such information may in some instances tend to be incriminating; and because a court order was involved, it found that the production was compelled. Thus, in the opinion of that Supreme Court, the criteria for self-incrimination was met in the Superior Court order.

At odds with the Alaska decision in Scott v. State, supra, is the rationale of the District Court in Carkulis' case. While agreeing that the protection against self-incrimination applies to testimonial or communicative evidence, State v. Armstrong (1980), 189 Mont. 407, 421, 616 P.2d 341, 349, the District Court held that the disclosure required by the court order was not compelled, State v. Anderson (Mont. 1984), 686 P.2d 193, 197, 41 St.Rep. 1357, 1360. The District Court held that there was no compulsion in the Montana statute because Carkulis was not compelled to reveal that which he did not intend to reveal at trial anyhow.

California also held against the disclosure of witness lists and statements in In Re Misner (Cal. 1985), 698 P.2d 637. In that case the California history of prosecutorial discovery (advocated by the late J. Traynor) was examined, beginning with Jones v. Superior Court (Cal. 1962), 372 P.2d 919; through the backing away from Jones in Prudhomme v. Superior Court (Cal. 1970), 466 P.2d 673; down to the facts before it in Misner. That case involved the constitutionality of a statute which permitted the prosecution to discover from the defendant or his counsel, following testimony under direct examination of defense witnesses other than the defendant, other statements made by those witnesses. The California appellate court examined Williams v. Florida, supra, and United States v. Nobles, supra, but rested its decision on California state law. It determined that the California statute was directed only to prior statements of witnesses produced by the defense and though limited to the scope of their direct testimony, the statute obviously contemplated that the discovery permitted by the statute would provide the state with evidence to impeach the defense witnesses. Misner determined that it

- 14 -

violated a defendant's privilege against self-incrimination to extract impeachment evidence from him.

Further in Misner, the prosecution argued that even if the privilege against self-incrimination covered prior statements of defense witnesses, the defendant waived the privilege by putting the witnesses on the stand, at least to the extent of the permissible scope of cross examination. The California Supreme Court said the state could not rely on this rule, stating:

> . . . while it may be true that by putting witnesses on the stand the defendant waives any right to object to their vigorous cross examination by the prosecution, he does not waive his right to refuse to supply the prosecution with the means to conduct that cross examination.

698 P.2d 637, 647.

Within the last quoted sentence of the Misner court, we find the kernel of difference between California law and Montana law on this subject. In Sikora, supra, we quoted with approval (admittedly dictum, but bearing on the Montana view of the law) from People v. Damon (N.Y. 1969), 247 N.E.2d 651, as follows:

> "It is argued first that there was a possible violation of the right against self-incrimination. We do not agree. These statements were not those of the defendant but of witnesses offered by the defendant. In no sense can it be said that he is being compelled to produce incriminating statements of his own. The privilege against self-incrimination applies only to evidence of a testimonial or communicative nature obtained from the defendant himself."

154 Mont. 241, 249, 462 P.2d 897, 901.

While admitting the question is close, and with deference to sister states holding otherwise, we hold that the pretrial disclosure by the defendant of statements of witnesses he intends to call at trial does not offend his

- 15 -

rights against self-incrimination under state or federal grounds. Undoubtedly at trial time, such statements would be used to refresh the recollection of defense witnesses. As such they ought as well to be available to the state. Our holding is also based on the reciprocity provided in the state's statutes, and on the limitation of disclosure to those statements only of witnesses defendant intends to call at trial.

Disclosure of Statements of Experts

What is said foregoing applies with equal force to pretrial disclosure of prospective experts as witnesses. There is however, a necessary caution to be stated.

In the preparation of and the examination by such experts, the defendant may be encouraged to communicate freely and candidly with them. Thus experts' reports, notes and other written materials may contain potentially incriminating information to which the state should not be entitled. Malloy v. Hogan (1964), 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Particularly, the reports of psychologists and psychiatrists may contain such incriminatory statements.

In ordering the exchange of disclosure of statements of expert witnesses therefore, it may be expedient for District Courts to weigh the issues of self-incrimination carefully under the protective procedures hereafter discussed.

It is noted that in this case the order of the court is carefully limited. Carkulis is ordered to give summaries only of the testimony he expects the expert witnesses to give at trial.

Disclosure of Documents

Carkulis has been ordered by the District Court to disclose to the state "all papers, documents, photographs, and other tangible objects" which he in good faith knows will be used as exhibits at the trial.

Carkulis claims that this order violates the Fourth Amendment of the Federal Constitution[4], and Art. II, § 11[5] of the 1972 Montana Constitution.

Carkulis contends that the order is a compulsory production of documents and so it violates his Fourth Amendment rights within the meaning of Boyd v. United States (1886), 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. He argues that the seizure is void because the description of the place to be searched and things to be seized is not made with particularity, that the request is not made on probable cause, and that it is not made on written affirmation. Art. II, § 11, 1972 Montana Constitution.

The State counters that the authority of Boyd v. United States, supra, has been diminished, and there is no authority to support Carkulis that the Fourth Amendment applies to pretrial discovery.

The case which the State contends watered down the holding of Boyd, supra, is Hale v. Henkel (1906), 201 U.S.

---

4    "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Fourth Amendment to the United States Constitution.

5    "The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures.  No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing."  Art. II, § 11, 1972 Montana Constitution.

43, 26 S.Ct. 370, 50 L.Ed. 652, wherein it was stated that "the Fourth Amendment was not intended to interfere with the power of Courts to compel, through a subpoena duces tecum, the production, upon a trial in court, of documentary evidence." However, the United States Supreme Court also said in Hale that an order for the production of book and papers may constitute an unreasonable search and seizure within the Fourth Amendment whether the seizure occurred under a search warrant or a subpoena duces tecum. In Hale, the Supreme Court decided that the subpoena duces tecum was far too sweeping because of the vast extent of documents required to be produced from many different places under the subpoena.

Here the order of the court is moderate in comparison to the subpoena duces tecum in Hale. Carkulis is required to produce, for examination or reproduction, papers, documents, photographs, and tangible objects which he "in good faith knows will be used as exhibits at trial." The order in its terms is definitive, and cannot be a burden upon the defendant, since he will use those same objects at trial. In consideration of the language used by the District Court order, we hold it meets the test of reasonableness, under Fourth Amendment tests, and is equally amenable to Art. II, § 11 of the 1972 Montana Constitution. Carkulis' arguments that the place to be searched or the things to be seized or that probable cause has not been set forth nor supported by oath or affirmation, are state constitutional requirements for the issuance of a warrant. In this pretrial discovery procedure, the use of a warrant is not involved. For the

efficient administration of justice, the court's order here is directed to the production of objects for examination and reproduction which must eventually come to light at trial. Even if the order for production is regarded as a seizure of sorts, it is nevertheless reasonable. The constitutional prohibitions are against unreasonableness.

Due Process

Carkulis argues that the imposition of sanctions if he fails to abide by the discovery order of the District Court deprives him of due process. The due process provision of the Fifth Amendment is applicable to state action through the Fourteenth Amendment. Malloy v. Hogan (1964), 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.

The grinding surface of the due process question in this type of issue is whether reciprocity for discovery exists. In Williams v. Florida, supra, the United States Supreme Court indicated that nothing in the due process clause precludes any states from using broad discovery procedures designed to increase evidence available to both sides in criminal cases and to enhance goals and fairness in the adversary system. In Wardius v. Oregon (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82, the United States Supreme Court reaffirmed this point in reversing a conviction of an Oregon defendant based on an Oregon statute. The Oregon defendant had not given notice to the prosecution that he intended to use the defense of alibi and at trial his alibi witness as well as his own testimony was stricken. He appealed his conviction on the ground that he had been deprived of due process because under the Oregon statute there is no provision for reciprocal discovery, that is that the accused had not the same rights of pretrial discovery as did the State. The U.S. Supreme Court held that the Oregon statute

did not provide reciprocal rights of discovery and that thereby due process was violated.

The statutes now enacted in this State relating to pretrial discovery in criminal cases provide for full discovery within constitutional and privilege limitations to both sides. After this Court approved the requirement that the defendant give notice of an alibi defense in Sikora, supra, the case went back to the District Court where the defendant, Radford, was convicted. He brought an action for habeas corpus in the federal system, in the United States District Court for the District of Montana. There the United States district judge upheld the notice of alibi statute and he was affirmed on appeal in the Ninth Circuit. Radford v. Stewart (9th Cir. 1973), 472 F.2d 1161, 1162. The circuit court said:

> The State operated in good faith in this action and did not use the discovery required merely to build its case. No investigation was made of the witnesses named by the defendant. In fact, defendant was allowed, without objection, to call two witnesses whose names had not been noticed. Defendant also knew prior to trial of the prosecution's only rebuttal witness (a psychiatrist). Judge Battin thus found that under the facts of this case reciprocity existed.

Since under the cases due process in this kind of case hinges on reciprocity, and reciprocity is provided in the statutes, Carkulis' due process argument falls.

This Court noted the presence of reciprocity in the statutes which were precursors to the present pretrial discovery statutes as providing due process in State v. Bentley (1970), 155 Mont. 383, 472 P.2d 864.

Obligation of Defense Counsel Work-Product

The order of the District Court for pretrial discovery is binding not only upon Carkulis himself, but upon his

agents and attorneys. Questions arise as to the impact of such an order upon the attorney-client relationship and its effect upon the work-product rule.

First, the work-product rule. It is a qualified evidentiary privilege recognized in Hickman v. Taylor (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed 451. The work-product rule is different from the attorney-client privilege. The latter protects communications between the client and his attorney or the attorney's agent. The work-product doctrine protects against the disclosure of specific documents and tangible items prepared in actual anticipation of litigation or for trial. The exemption from discovery is intended to insure the privacy of a party's attorney from unnecessary intrusion by opposing parties or counsel. However, the "privilege" is not absolute. It is not personal to the client. It can be waived by an attorney's course of conduct. See People v. Small (Colo. 1981), 631 P.2d 148, 159.

There is no doubt that if an attorney uses at trial a statement he obtained and prepared in anticipation of litigation in interrogating or cross examining a witness, the full statement, even though work-product, must be produced at the demand of the other side. See People v. Small, supra. By the use of the statement at trial, the attorney has waived the work-product protection, since the material in the statement has become substantive evidence. On this ground Justice Bryon R. White specially concurred in Williams v. Florida, supra, he contended that the work-product rule does not apply to evidence, and therefore no waiver of work-product rule by the attorney was involved. The majority in Williams held the attorney had waived the work-product rule by using the statement to impeach on cross-examination. In any event, the statement becomes discoverable when used at trial.

The order of the District Court in this case was tailored to require the plaintiff and his counsel and agents to produce all documents and tangible objects which the defendant in good faith knows will be used as an exhibit at the trial. If the defendant knows that such objects will be used at trial, whether we regard the same as evidence, or the use of them as a waiver of the work-product doctrine, since they are discoverable in any event, the timing of the discovery is the only question involved. The logic of Williams, that "accelerated disclosure" is permissible if the objects will come to light in any event applies here. If counsel, in representation of this client, acquires work-product objects which the defendant knows in good faith will not be used at trial, they are not subject to discovery under the order of the court. Further they are protected by the provisions of § 46-15-332, MCA, that all matters which are privileged upon the trial are privileged against disclosure in the discovery procedure.

A close question may arise in some instances as to whether observance of the discovery order by a defendant's attorney in the production of documents or tangible objects would in themselves incriminate his client. It appears to us that there are safeguards in that a protective order may be sought under § 46-15-328, MCA, as we will hereafter discuss.

Excision and Protective Orders

Section 46-15-328, MCA, allows any party to obtain orders denying, deferring, or regulating pretrial discovery. The statute provides for excision of nondiscoverable material and for applications to the district court in camera for protective orders.

Carkulis contends that § 46-15-328, MCA, violates his right against self-incrimination because subsection 3

requires the counsel of <u>both</u> parties be present during all protective order presentations.

"A statute derives its meaning from the entire body of the words, taken together." Wyse v. District Court of Fourth Judicial District (1981), ____ Mont. _____, 636 P.2d 865, 866. Section 46-15-328(1), MCA, gives the District Court the power to regulate disclosure:

> (1) Upon a motion of any party showing good cause, the court may order . . . that any other disclosure as required by sections 46-15-321 through 46-15-329(b) . . . be . . . regulated when it finds:
>
> (b) that the risk cannot be eliminated by a less substantial restriction of discovery rights.

It is possible for occasions to arise where applications for protective orders are made to the court, and where if counsel for all parties are present, "the cat is then out of the bag, never to be recaptured." Subsection 1 in the statute gives the court the flexibility to employ appropriate protection procedures. The provisions of subsection 3, that the court may permit the moving party to present the material or information for the inspection of the judge alone in the presence of all counsel, merely provides one method of accomplishing the legislative purpose. It is not exclusive. It does not exclude <u>ex parte</u> presentations. The District Court can exert its judicial authority in its adjudicatory function so as to protect constitutional and statutory rights.

Among the inherent powers of the court is "the right of the court to receive information in private so that it can intelligently assess its adjudicatory function." Phoenix Newspapers, Inc. v. Superior Court (Ariz. 1983), 680 P.2d 166, 169. The determination of whether material is discoverable or not is a necessary facet of the adjudicatory

function.   People v. Stevens (Ill. 1981), 430 N.E.2d 331, 333.

The United States Supreme Court has never squarely addressed the issue of in camera hearings conducted ex parte. Yet, it has seen fit to approve of such procedure by implication.   See Taglianetti v. United States (1969), 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (approving of in camera inspection of unlawful electronic surveillance case as not being violative of the Fourth Amendment where the defendant was provided with all tapes in which he took part in the conversation.); Dennis v. United States (1966), 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (recognition of in camera procedure when national security or clear-cut threat to individuals is identified).

While the 1975 Amendments to the Federal Rules of Criminal Procedure were pending, the United States Supreme Court proposed a mandatory ex parte proceedings upon request of a party seeking a protective order.   Moore's Federal Practice, Section 1604 at 16-63.   The House of Representatives changed the mandatory language to permissive in order to prevent burdening the trial courts.   The amended proposal was codified in Rule 16(d)(1), Fed.R.Crim.P.

It provides:

> Protective and modifying orders.
> Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as appropriate upon motion by a party.   The court may permit the party to make such a showing in whole or in part, in the form of a written statement to be inspected by the judge alone.   If the court enters an order to grant relief following such an ex parte showing, the entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

Not all protective order requests will require the use of the _ex_ _parte_ procedure. _Ex_ _parte_ proceedings are generally disfavored and are not to be employed lightly. The procedure would be appropriate only if an adversary hearing would defeat the purpose of the order sought.

Sanctions Fair Trial

The sanction applied by the District Court in its order for disclosure is that if the materials are not disclosed, the defendant will be precluded from offering the same at trial.

Carkulis argues that the imposition of such a sanction deprives him of the right to present a defense and thus violates the Sixth Amendment[6] of the Federal Constitution and Art. II, § 24[7] of the Montana Constitution.

Carkulis argues that the Sixth Amendment is a guaranty to an accused of a right to call witnesses in his favor,

---

[6] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and the district wherein the crime shall have been committed,. . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of counsel for his defense." Sixth Amendment to the United States Constitution.

[7] "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed . . ." Art. II, § 24, 1972 Montana Constitution.

without qualification or restraint. Washington v. State of Texas (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023. The State relies on Rowan v. Owens (7th Cir. 1984), 752 F.2d 1186, 1191, which held that to prevent the witness from testifying is not a _per_ _se_ unreasonable interference with the defendant's right to defend himself. Again, in U.S. v. Nobles, supra, it was held that the Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; "one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth."

Once it is determined, as we have determined here, that reciprocal pretrial disclosures subject to constitutional or statutory limitations are permissible, it goes hand in hand with that determination to say that the District Court may exercise its judicial discretion in enforcing such permissible disclosures.

We do not in this opinion pass upon the appropriateness of the sanctions set forth in the District Court in the Carkulis case, for the reason that the sanctions have yet to be applied. See State v. Fendler (Ariz. App. 1980), 622 P.2d 23, 41, for a discussion of appropriate sanctions.

Application of Section 46-15-323(3)

We find no substance in Carkulis' argument that before § 46-15-323(4) can be operative, defendant must have acted under subdivision (3) of that statute.

Disposal

Accordingly, we have considered Carkulis' petition under our power of supervisory control. Upon consideration the

application of Carkulis for a writ of supervisory control directed to the District Court is DENIED, and these proceedings are dismissed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice William E. Hunt, Sr., dissenting:


I dissent from the majority's holding that before the trial the defendant in a criminal proceeding must make available to the prosecution a list of witnesses and exhibits expected to be used at trial. To do this is to go one step further to make the government more powerful than its citizens.

Our government was founded as a reaction to the oppressive and tyrannical actions of the British government in the eighteenth century. The founding fathers knew of the abuses of human rights that easily coupled with an overly authoritarian government and sought to protect the citizens of their newly formed nation-state by a recognition of certain inalienable rights enumerated in the Bill of Rights. Now we seem to be captivated by the idea of efficiency at the expense of safety.

As Justice Black stated in his dissent in Williams v. Florida (1970), 399 U.S. 78, 112, 26 L.Ed.2d 446, 483, 90 S.Ct. 1893, 1912:

> All of these rights are designed to shield the defendant against state power. None are designed to make convictions easier and taken together they clearly indicate that in our system the entire burden of proving criminal activity rests on the State.

He continues:

> [The founding fathers] were well aware that any individual might some day be subjected to criminal prosecution, and it was in order to protect the freedom of each of us that they restricted the Government's ability to punish or imprison any of us.

Williams, 399 U.S. at 116 (dissenting op.).

The effect of the majority opinion is to sacrifice constitutional rights for the sake of "efficient administration of justice." In doing so it gives in to the rhetoric we often hear that the courts are to blame for the increasing crime problem in this country and that only a "hardline" approach by the courts will solve the problem. Whatever the cause of our increasing crime it is not an inefficient judicial or prosecutorial system. In 1985, the prisons in the United States contained twice as many detainees per capita as the United Kingdom's, four times as many as France's and eight times as many as Portugal's. Encyclopaedia Britannica, Book of the Year (1986) at 188. Chief Justice Wachtler of the New York Court of Appeals has said in a talk in Montana last July that New York alone has 40,000 prison inmates, up 26,000 from 1975. The Montana Lawyer, September, 1987, at 3. According to the Annual Report of the Department of Institutions, Montana has increased its prison population by an average of 376 in 1976 to 937 in 1987. Conversation with officials of the Montana Department of Institutions (November 23, 1987). These are not the numbers of an inefficient court system that require citizens to surrender rights for additional productivity.

In any event,

> [T]he Framers decided that the benefits to be derived from the kind of trial required by the Bill of Rights were well worth any loss in "efficiency" that resulted. Their decision constitutes the final word on the subject, absent some constitutional amendment. That decision should not be set aside as the Court does today.

Williams, 399 U.S. at 114 (J. Black, dissenting op.). Justice Black accurately predicted how the Williams holding would be expanded by the state courts to force the defendant to assist in the prosecution of his own case. It is not just

the defendant but all of us who have lost ground today in the struggle between state control and individual freedom.

_____
Justice

Clerk's
Office

WEN

No. 87-164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA, ex rel.,
JAMES CARKULIS,

Relator,

-vs-

DISTRICT COURT OF THE THIRTEENTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
YELLOWSTONE, HONORABLE G. TODD BAUGH,
Presiding,

Respondent.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

For Relator:

Allen Beck argued, Billings, Montana
Jeffrey T. Renz argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Judy Browning argued, Asst. Atty General, Helena
Harold Hanser, County Attorney, Billings, Montana
Terry Swift, Deputy County Atty., Billings
Mike McGrath argued, County Attorney, Helena, Montana

---

Submitted: September 2, 1987
Decided: November 25, 1987

Filed:

Ethel M. Harrison
Clerk

*WEH's dissent.*
*Please correct original*

The effect of the majority opinion is to sacrifice constitutional rights for the sake of "efficient administration of justice." In doing so it gives in to the rhetoric we often hear that the courts are to blame for the increasing crime problem in this country and that only a "hardline" approach by the courts will solve the problem. Whatever the cause of our increasing crime it is not an inefficient judicial or ~~procuratorial~~ *prosecutorial* system. In 1985, the prisons in the United States contained twice as many detainees *per capita* as the United Kingdom's, four times as many as France's and eight times as many as Portugal's. Encyclopaedia Britannica, Book of the Year (1986) at 188. Chief Justice Wachtler of the New York Court of Appeals has said in a talk in Montana last July that New York alone has 40,000 prison inmates, up 26,000 from 1975. The Montana Lawyer, September, 1987, at 3. According to the Annual Report of the Department of Institutions, Montana has increased its prison population by an average of 376 in 1976 to 937 in 1987. Conversation with officials of the Montana Department of Institutions (November 23, 1987). These are not the numbers of an inefficient court system that require citizens to surrender rights for additional productivity.

In any event,

> [T]he Framers decided that the benefits to be derived from the kind of trial required by the Bill of Rights were well worth any loss in "efficiency" that resulted. Their decision constitutes the final word on the subject, absent some constitutional amendment. That decision should not be set aside as the Court does today.

Williams, 399 U.S. at 114 (J. Black, dissenting op.). Justice Black accurately predicted how the Williams holding would be expanded by the state courts to force the defendant to assist in the prosecution of his own case. It is not just